UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:17-cr-00089-JAW |
| | ) | 1:20-cv-00093-JAW |
| IULIAN PETRE | ) | |

**ORDER AFFIRMING THE RECOMMENDED DECISION
OF THE MAGISTRATE JUDGE**

Iulian Petre objects to the Magistrate Judge's recommended decision that his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is time-barred. The Court reviewed and considered the Magistrate Judge's recommended decision, together with the entire record; the Court has made a de novo determination of all matters adjudicated by the Magistrate Judge's recommended decision; and the Court concurs with the recommendations of the Magistrate Judge in full, and for the reasons set forth in his recommended decision and in this Order determines that no further proceedings are necessary.

**I.    BACKGROUND**

On August 28, 2017, a jury convicted Iulian Petre of six counts of receiving a firearm in interstate commerce with intent to commit an offense and aiding and abetting and three counts of shipment of a firearm in foreign commerce with intent to commit an offense an aiding and abetting. *Jury Verdict Form* at 2-4 (ECF No. 90). On April 5, 2018, the Court sentenced Mr. Petre to twenty-four months in prison, three years of supervised release, a $900.00 special assessment, and no fine. *J.* at 2-7 (ECF No. 124).

Mr. Petre did not file a notice of appeal with the Court until November 7, 2019. *Notice of Appeal* (ECF No. 130). On December 13, 2019, the First Circuit concluded that Mr. Petre's notice of appeal was untimely and dismissed the appeal. *J.* (ECF No. 136). The Court received the First Circuit's mandate on January 3, 2020. *Mandate* (ECF No. 137).

On March 11, 2020, Mr. Petre moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, while in a halfway house after his release from prison. *Mot. to Vacate, Set Aside, or Correct a Sentence By a Person in Federal Custody* at 1-2 (ECF No. 138) (*Def.'s Mot.*). On March 13, 2020, the Magistrate Judge ordered the Government to answer. *Order to Answer* (ECF No. 140). On March 18, 2020, the Government requested that the Magistrate Judge authorize Mr. Petre's former lawyer to disclose his communications with Mr. Petre that would be relevant to Mr. Petre's Sixth Amendment claim, which alleges ineffective assistance of counsel. *Gov't's Mot. for Ct. Order Authorizing Disclosure of Confidential Communications and to Extend the Deadline for Answering the 28 U.S.C. § 2255 Pet.* (ECF No. 141). On May 11, 2020, the Magistrate Judge granted the Government's motion. *Order on Pending Mots.* (ECF No. 147).

On July 10, 2020, the Government filed its response and moved for summary dismissal of Mr. Petre's § 2255 motion. *Gov't's Resp. to Pet'r's Mot. Pursuant to 28 U.S.C. § 2255 and Mot. for Summary Dismissal* at 1 (ECF No. 149). At the same time, the Government also filed a declaration from Mr. Petre's prior attorney, Jeremy Pratt. *Id.*, Attach. 1, *Decl. of Jeremy Pratt* (*Pratt Decl.*). On July 29, 2020, Mr. Petre

replied.  *Pet'r's Resp. to the Gov't and the 2255 Mot. to Stay* (ECF No. 150); *id.*, Attach. 1, *Pet'r's Resp. to the Decl. of Jeremy Pratt*.

On September 29, 2020 the Magistrate Judge issued his recommended decision on Mr. Petre's § 2255 motion, which recommended that the Court (1) dismiss the motion because Mr. Petre filed it outside the one-year statute of limitations and equitable tolling was improper and (2) deny a certificate of appealability. *Recommended Decision on 28 U.S.C. § 2255 Mot.* at 1-5 (ECF No. 151) (*Recommended Decision*).  On October 9, 2020, Mr. Petre objected.  *Recommended Decision on 28 U.S.C. 2255 Mot.* (ECF No. 152) (*Def.'s Obj.*).  The Government did not respond to Mr. Petre's objection.

## II. DISCUSSION

Although the Magistrate Judge's recommended decision is correct and in general requires no elaboration, the Court addresses four of Mr. Petre's objections to set the record straight.

### A. Alleged Judicial Intervention on behalf of the Prosecution

Mr. Petre accuses the Court of intervening during his testimony to aid the prosecution.  *See Def.'s Obj.* at 3 ("Judge Woodcock, however, intervened to save the feds for not losing the case page 55 from my testimony").  That is not what happened.  At Mr. Petre's trial, the following exchange occurred while AUSA Ruge was cross-examining Mr. Petre:

> Mr. Ruge:  Okay. So you're saying that anybody who saw a serialized part of this firearm in Romania is lying, that's your testimony?

| | |
|---|---|
| The Court: | That's an improper question.  Ladies and gentlemen, that question is not proper under the rules of evidence, and you are to disregard the question entirely. |
| Mr. Ruge: | I apologize to the Court. |
| Mr. Ruge: | Your testimony was they're bluffing; is that correct? |
| Mr. Petre: | Bluffing towards the agents that went there and searched for the guns. |
| Mr. Ruge: | So your testimony was they were bluffing.  What did you mean by bluffing?  Do you mean they weren't telling the truth? |
| Mr. Petre: | Right. |
| Mr. Ruge: | Okay.  By not telling the truth, they – |
| Court Reporter: | I'm sorry, can you repeat that? |
| Mr. Ruge: | I'm sorry.  It means they – |
| The Court: | I will see counsel. |

*Partial Tr. of Proceedings* at 55:5-23 (ECF No. 95) (*Trial Test.*).  Then, at sidebar, the following exchange happened:

| | |
|---|---|
| The Court: | It's improper for you to ask him whether someone else is lying. |
| Mr. Ruge: | But that's what he testified to on direct. |
| The Court: | You've gone far enough. |
| Mr. Ruge: | Yes, Your Honor.  Thank you, Your Honor. |

*Id.* at 55:25-56:5.

Although AUSA Ruge defended the questions on the ground that Mr. Petre himself had opened the door by claiming other witnesses were bluffing, the Court

4

concluded that the prosecutor should not venture into an area of questioning so prejudicial to the Defendant. *See United States v. Pereira*, 848 F.3d 17, 21 (1st Cir. 2017); *United States v. Sullivan*, 85 F.3d 743, 750 (1st Cir. 1996); *United States v. Akitoye*, 923 F.2d 221, 224 (1st Cir. 1991). The Court did not, as Mr. Petre claims, "save the feds [from] losing the case." *See Def.'s Obj.* at 3. To the contrary, the Court inserted itself in favor of the Mr. Petre, not the prosecution, in ruling this line of questioning off limits.

### B.   Mr. Petre's Alleged Need for an Interpreter

Mr. Petre also alleges that he needed an interpreter present during his prosecution, particularly during his sentencing. *See Def.'s Obj.* at 2 ("Attorney Pratt never asked me if I needed an interpreter"). This is the very first time Mr. Petre has claimed he needed an interpreter and the Court is extremely dubious about this assertion.

Mr. Petre went through the entire criminal justice process in the District of Maine and at no time ever claimed he needed an interpreter. *Tr. of Proceedings, Att'y Appointment and Initial Appearance* 2:2-16:13 (ECF No. 146); *Pretrial Servs. Report* 1-4 (ECF No. 8); *Tr. of Proceedings, Arraignment* 2:2-11:15 (ECF No. 143); *Partial Tr. of Proceedings, Jury Trial Frye Colloquy* 2:2-3:14; *Partial Tr. of Proceedings, Jury Trial Colloquy with Judge* 2:3-3:24 (ECF No. 145); *Tr. of Proceedings, Sentencing Proceedings* 2:2-95:20 (ECF No. 142) (*Sentencing Tr.*). In fact, Mr. Petre testified on his own behalf during his jury trial and was subjected to rigorous cross-examination, but at no point, suggested he was having any difficulty with English. *Trial Test.* at

3:5-83:6. Nor is Mr. Petre's newly asserted difficulty with English apparent from the Court's review of his extended testimony. *Id.*

During his testimony, Mr. Petre described his familiarity with the English language. He said that he had gone to high school in Bucharest, Romania and had studied English, but had not become fluent. *Id.* 4:11-25. Mr. Petre first entered the United States on November 30, 1989 and he became a naturalized citizen on September 26, 1995. *Presentence Investigation Report* ¶ 35 (*PSR*). When he arrived in the state of Maine, his American sponsor found a person to tutor him in English and Mr. Petre studied English for a year under his tutelage. *Trial Test.* 12:6-12. He then took classes at Waterville High School in English as a second language. *Id.* 12:11-12.

Finally, at his sentencing hearing, the Court directly asked Mr. Petre whether Part C, the contents of the Presentence Investigation Report (PSR) relating to his offender characteristics, were accurate. *Sentencing Tr.* 5:15-6:7. In response to the Court's direct question, Mr. Petre represented to the Court that the contents of the PSR were accurate. *Id.* 6:3-5. For purposes of this order, the significance of this representation is that the PSR directly addressed his English fluency:

> His primary language is Romanian; however, he is fluent in English as a second language.

*PSR* ¶ 35. "A defendant is normally bound by the representations that he himself makes in open court." *United States v. Gates*, 709 F.3d 58, 69 (1st Cir. 2013). In fact, as the First Circuit has noted, such statements "are more likely to be reliable than later versions prompted by second thoughts." *See id.* (internal quotation omitted).

6

The Court knows of no reason to accept Mr. Petre's late-discovered lack of fluency in English.

### C. Acquitted Conduct Sentencing

In addition, Mr. Petre claims that it was "disgraceful and shameful conduct" for the Court to consider counts 1-3 of the indictment, on which the jury acquitted him, during his sentencing. *Def.'s Obj.* at 6. Again, this is not what happened. The Court expressly chose not to sentence Mr. Petre based on his acquitted conduct. At sentencing, the Court provided a transparent analysis of the acquitted conduct issue, stating:

> Regarding conduct that in this case was either acquitted conduct or dismissed conduct – and I think I'm including the three firearms under either version here, either under the Logan airport incident or relevant conduct in 2012 – the courts have made it clear that even though conduct has been acquitted or dismissed, the court may consider such conduct for sentencing purposes, but the courts have also made it clear that a sentencing judge may disagree with the guidelines. The authority to do so is found in the Supreme Court cases of Kimbrough and Gall and the children of Kimbrough and Gall.
>
> The First Circuit recently wrote that a sentencing court, quote, may consider relevant conduct that constitutes another offense even if the defendant has been acquitted of that offense so long as it can be proven by a preponderance of the evidence, unquote, and that's United States v. González, which is 857 F.3d 46, at 58, a 2017 First Circuit case.
>
> So, clearly, I have the authority to consider acquitted conduct or dismissed conduct, but I'm not aware of any post-Booker authority, either from the Supreme Court or the First Circuit, that actually requires the sentencing court to consider acquitted or dismissed conduct.
>
> As a matter of fairness, I have never liked the part of the law that allows me to consider acquitted conduct. It strikes me as being contrary to common perceptions of criminal justice. In other words, what we're talking about here, for example, is Count 1, where the defendant –

>   where the government put on a case against the defendant involving a specific firearm, argued that case, presented many witnesses over the course of many days, they were cross-examined, arguments were made, and the jury, after due consideration, acquitted the defendant of that charge, and now, based on a preponderance of the evidence, the government brings the firearm that was the subject in the acquitted count back into the sentencing process and holds even the acquitted conduct against the defendant.
>
>   I just don't like that; I don't like it as a matter of policy; I think it is disturbing. Again, I'm not blaming the government. The government has a right to bring those matters before the court and courts have – even the Supreme Court has upheld the use of acquitted conduct for – to calculate sentencing guidelines because the standard of proof is lower.
>
>   But from the court's perspective, once the government has put the facts underlying an offense before a jury and the jury has acquitted a defendant, it seems patently unfair to use the same acquitted conduct to enhance the defendant's sentence on the crimes for which the defendant was convicted, and my thinking extends to the conduct underlying the dismissed counts. This is not to say that in a unique and particular case I might conclude that acquitted conduct is properly considered, but here, where the government failed to sustain its burden of proof on Counts 1, 2, and 3 and just before trial dismissed Count 9, the court will not hold the facts in those unproven counts against the defendant.

*Sentencing Tr.* at 33:8-35:11.

Even though the Court did not sentence Mr. Petre on the basis of his acquitted conduct, Mr. Petre correctly observes that it could have. *Def.'s Obj.* at 5 ("[F]ederal judges can, and often do, use what's called 'acquitted conduct' charges for which a person has been found not guilty when sentencing defendants for the crimes the jury says they did commit"); *see United States v. Watts*, 519 U.S. 148, 152 (1997) (noting that "under the pre-Guidelines sentencing regime, it was well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted" and that "[t]he

Guidelines did not alter this aspect of the sentencing court's discretion") (internal citation omitted); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence"). The United States Supreme Court has long held that judges do not violate the Constitution by considering acquitted and uncharged conduct during sentencing. *See Watts,* 519 U.S. at 152 (discussing the history of this practice); *see also Williams v. New York*, 337 U.S. 241, 244-50 (1949) (upholding a death sentence that a judge imposed after finding the defendant committed approximately thirty uncharged burglaries, had "a morbid sexuality," and was "a menace to society").

Thus, Mr. Petre's objection on this front is without merit. He alleges error that (1) did not happen and (2) would not be error even if it had occurred.

### D.   Double Jeopardy

Relatedly, Mr. Petre argues that his sentence violates the Double Jeopardy Clause of the Fifth Amendment. *Def.'s Obj.* at 6-7. Mr. Petre faults the Court for considering three firearms that he purchased in 2007 from Kittery Trading Post when it sentenced him, claiming that violated the Double Jeopardy Clause because those three firearms were the subject of an earlier civil infraction. *Id.* at 6-7. This did not happen either.[1] As the sentencing transcript shows, the Court chose not to consider

---

[1] The Court doubts that considering the 2007 civil infraction would have violated the Double Jeopardy Clause. *See Hudson v. United States*, 522 U.S. 93, 98-99 (1997) ("We have long recognized that the Double Jepardy Clause does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment. The Clause protects only against the imposition of

Mr. Petre's 2007 conduct for several reasons, including the fact that the Government did not prosecute him at that time, the policies underlying the typical five-year statute of limitations for federal offenses, and the Court's belief that the Government failed to show "that the events in 2007 were, in fact, the same scheme or plan as the instant offense . . .." *Sentencing Tr.* at 36:12-38:7. Thus, the Court finds no basis for Mr. Petre's double jeopardy objection.

### III.  CONCLUSION

1. The Court <u>AFFIRMS</u> the Recommended Decision of the Magistrate Judge (ECF No. 151).

2. The Court <u>DENIES</u> Iulian Petre's Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (ECF No. 138).

3. The Court <u>DENIES</u> a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of December, 2020

---

multiple *criminal* punishments for the same offense . . .") (emphasis in original) (internal citations omitted); *see also Witte v. United States*, 515 U.S. 389, 401-04 (1995) (concluding that the Double Jeopardy Clause bars successive punishment for the same offense but does not preclude a sentencing court from increasing a defendant's sentence for an offense after considering conduct underlying a prior offense).  However, the Court need not decide this issue because it did not consider that conduct for purposes of its sentencing guideline calculations.